ITSI T.V. PRODUCTIONS, INC., Plaintiff,

v.

CALIFORNIA AUTHORITY OF RACING FAIRS, et al., Defendants.

No. CIV. S–89–1686 LKK.

United States District Court, E.D. California.

March 3, 1992.

David W. Post, Harry E. Hull, Jr., Mc-Donough, Holland & Allen, Sacramento, Cal., David B. Kahn, Mark E. King, David B. Kahn, Ltd., Fredrick Rothenberg, Fredrick Rothenberg, Ltd., Chicago, Ill., for plaintiff ITSI T.V. Productions, Inc.

Dan L. Carroll, Krista C. Breuer, Downey, Brand, Seymour & Rohwer, Sacramento, Cal., for defendant Hipodromo De Agua Caliente.

Harold L. Eisenberg, Deputy Atty. Gen., Sacramento, Cal., for defendants California Exposition & State Fair and related defendants.

James Kostoff, Michael Smith, Nichols, Stead, Boileau & Kostoff, Claremont, Cal., for defendants Sports Media Network and related defendants.

Nicholas J. Santoro, James J. Jimmerson, Chrispin M. Rivera, Jimmerson, Davis & Santoro, Las Vegas, Nev., for defendants Sports Form, Inc. and related defendants.

Joseph S. Genshlea, Joan A. Jernegan, Weintraub, Genshlea & Sproul (David M. Blicker, Stanley Futterman, of counsel), Blicker, Futterman & Stein, Sacramento, Cal., for defendants California Authority of Racing Fairs, and related fairs.

## AMENDED ORDER

KARLTON, Chief Judge Emeritus.

Defendant Hipodromo de Agua Caliente ("Caliente") moves to dismiss plaintiff ITSI T.V. Productions, Inc.'s ("ITSI") complaint for copyright infringement. Caliente asserts that this court lacks subject matter jurisdiction over ITSI's claims, because ITSI cannot show that Caliente is liable for an act of copyright infringement committed in the United States. For the reasons I explain herein, Caliente's motion to dismiss for lack of subject matter jurisdiction is GRANTED.[1]

I

## FACTS AND BACKGROUND [2]

Plaintiff ITSI T.V. Productions, Inc. is an Illinois corporation doing business in California. Second amended complaint ¶ 1 ("SAC"). Plaintiff alleges that defendant California Authority of Racing Fairs ("CARF"), a California joint powers authority, was created to serve as the agent of certain California fairs which conduct horse racing. Id. ¶ 2. CARF and these fairs are referred to in plaintiff's complaint as the "CARF group." Id. In 1983, prior to the 1984 horse racing season, ITSI contracted with CARF to provide closed-circuit television services to the tracks where horse races were being run. Id. ¶ 32.

From September 1986 to 1988, the CARF group broadcast plaintiff's television version of the horse races by satellite trans-

1. Defendant also moves to dismiss for ineffective service of process and for lack of personal jurisdiction. Because I conclude that the court lacks subject matter jurisdiction over plaintiff's claims, I need not consider defendant's other grounds for dismissal of the complaint.

2. Unless described as an allegation, in this section the court recites the undisputed background facts concerning this motion. Certain other undisputed facts are adverted to in the course of disposition of the motion.

I note that the exhibits provided by plaintiff in further opposition to defendant's motion are not supported by affidavit or declaration. Because defendant has not objected to plaintiff's reliance on this evidence, however, the court may and will rely on this evidence in deciding the present motion.

mission to locations away from the track where the races were being run in order to facilitate off-track betting on the races. *Id.* ¶ 33. The arrangement for some of the remote locations to receive the simulcast horse races was made by brokers or "disseminators" who "sold" the shows to the remote locations. *Id.* ¶ 34. Defendant Video Sports America ("VSA"), a Delaware corporation doing business in California, is alleged to be a disseminator of plaintiff's shows. *Id.* ¶ 13. At the times relevant to this lawsuit, Edward M. Spector was president of VSA.

Defendant Hipodromo de Agua Caliente, a Mexican corporation, operated its own horse racing track and twelve (12) off-track betting sites, or "remote locations," in Mexico. Deposition of Arturo Alemany at 11, 48–49. In August 1985, Caliente contracted with VSA to receive from VSA and distribute to Caliente's gaming establishments in Mexico "certain audio-visual signals of live horse racing programs, sporting events and related services." Plaintiff's ex. 4, Caliente–VSA contract (August 19, 1985) at 2 [hereinafter "Caliente–VSA contract"]; Plaintiff's ex. 47, Deposition of Edward M. Spector at 65 [hereinafter "Spector dep."]

Under the contract, VSA provided Caliente with a coded or scrambled signal of ITSI's shows, live satellite transmission of the shows, and the means and equipment to convert the signal into useable video images for viewing at sites in Mexico. Spector dep. at 42, 44. The contract specifically disclaims any agency relationship with Caliente. Caliente–VSA contract at 4 ¶ 4. The contract was performed and remained in effect until sometime in March 1988, when it was assigned to Telecom Broadcasting, Inc. ("TBI"). *See* Plaintiff's ex. 6, TBI–Caliente agreement (March 18, 1988).

Apparently VSA interacted on Caliente's behalf with various governmental agencies "to make sure that they [Caliente] met all of the various legal requirements and all of the various efforts that were involved to make this activity take place." Spector dep. at 69:18–21. Spector testified as follows,

I think it's fair to say that VSA was responsible for providing all of the services required for a customer to place an intelligent wager in [Caliente's] facilities in Mexico. What that means is that we would have to provide them with all of the information, no matter what the source, so that they could function in a manner that a customer could place a wager.

*Id.* at 67:18–24.

In May 1988, Caliente began its efforts to contract directly with some California race tracks for the receipt of audio-visual signals. *See, e.g.,* Plaintiff's ex. 8, Letter from Alemany "to whom it may concern," (May 19, 1988); Plaintiff's ex. 9, Letter from Alemany to Ralph Hynes, Los Angeles County Fair General Manager (May 23, 1988); Plaintiff's ex. 10, Letter from Alemany to Chris Korby, CARF (May 23, 1988). Defendant Los Angeles County Fair (LACF) executed contracts with Caliente on July 25, 1988, and August 16, 1989. Plaintiff's ex. 22 & 37. CARF executed contracts with Caliente on June 22, 1988, and May 26, 1989. Plaintiff's exh. 20 & 33. Each contract allows Caliente to "acquire the exclusive right to use, transmit, receive, and to provide for the dissemination of ... audio-visual signals." Plaintiff's ex. 20, 22, 33 & 37. Plaintiff alleges that CARF, various county and local fairs and tracks at which races were run, certain brokers or disseminators of the signal, and entities operating off-track betting locations infringed plaintiff's copyright in its "shows" of horse races by simultaneously broadcasting the shows to off-track betting locations without ITSI's authorization.

## II

## STANDARDS ON A MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

The party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists. *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936); *Scott v. Breeland,* 792 F.2d 925, 927 (9th Cir.1986). On a motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(1), the standards that must be applied vary according to the nature of the jurisdictional challenge.

■ If the challenge to jurisdiction is a facial attack, i.e., the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those application when a Rule 12(b)(6) motion is made. The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *See* 2A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 12.07[2.–1], at 12–46 to 12–47 (2d ed. 1987); *see also Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir.1982); *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A complaint will be dismissed for lack of subject matter jurisdiction if (1) the cause does not "arise under" any federal law or the United States Constitution, (2) there is no case or controversy within the meaning of that constitutional term, or (3) if the cause is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962).

■ If the challenge to jurisdiction is made as a "speaking motion," attacking the truth of the jurisdictional facts alleged by the plaintiff, a different set of standards must be applied. *Thornhill Publishing Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979). Where the jurisdictional issue is separable from the merits of the case, the district court may, under certain circumstances, hear evidence regarding jurisdiction and rule on that issue prior to trial, resolving factual disputes where necessary. *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed.

1209 (1947); *Sun Valley Gasoline v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983); *Thornhill*, 594 F.2d at 733.

However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial. *Augustine*, 704 F.2d at 1077 (citing *Thornhill*, 594 F.2d at 733–35); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1350, at 558 (Supp.1987). Where the jurisdictional issue and the merits are intertwined, the court must employ the standard applicable to a motion for summary judgment in disposing of the motion to dismiss for lack of subject matter jurisdiction. *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987).

Defendant's motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1) goes beyond the pleadings and thus is a "speaking motion." The jurisdictional and substantive issues— whether plaintiff can hold Caliente liable for acts of copyright infringement which occurred outside the United States—are so intertwined "that the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983). Accordingly, summary judgment standards apply to resolution of the motion.[3]

In a previous consideration of Caliente's motion to dismiss for lack of subject matter jurisdiction, I determined that defendant had met its initial burden employing summary judgment standards since plaintiff had not produced evidence tending to show that Caliente was liable for an act of copyright infringement which occurred within the territorial United States. *See Peter Starr Productions Co. v. Twin Star Con-*

---

**3.** The standards applicable to a motion for summary judgment are well-known, *see, e.g., Sacramento Valley Chapter of NECA v. IBEW*, 637 F.Supp. 1417, 1420–21 (E.D.Cal.1988), and no purpose would be served in setting them out here.

*tinental Films, Inc.,* 783 F.2d 1440, 1442 (9th Cir.1986) (acts of copyright infringement which take place outside the United States are not actionable in United States federal courts). Because plaintiff had not anticipated that the court would treat defendant's motion under summary judgment standards, I gave the parties the opportunity to conduct additional discovery concerning Caliente's liability for acts of infringement occurring in the United States. *See Eaton,* 692 F.2d at 729–30. The parties filed supplemental briefs and the matter was reargued.

I turn now to analysis of the court's subject matter jurisdiction over plaintiff's claims for copyright infringement against defendant Caliente.

## III

### LIABILITY FOR COPYRIGHT INFRINGEMENT

Plaintiff alleges that it is the owner of a copyright in audiovisual works,[4] which are described by the plaintiff as "shows" of horse races. Copyright protection exists for an audiovisual work if it is "fixed" in any "tangible medium of expression." 17 U.S.C. §§ 101 & 102. A work consisting of sounds and images that are being transmit-

ted is fixed if a copy of the work is made simultaneously with its transmission. *Id.* § 101. For purposes of deciding defendant's motion to dismiss for lack of subject matter jurisdiction, the court assumes without deciding that the transmissions that were videotaped are copyrightable, *see Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,* 805 F.2d 663, 668 (7th Cir.1986) (telecasts of ball games videotaped at the same time that they are broadcast are fixed in tangible form, and thus, simultaneously recorded live broadcasts are copyrightable), *cert. denied,* 480 U.S. 941, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987), and that plaintiff owns the copyright in those "shows" of horse races.

### A. *Direct Liability*

The Copyright Act of 1976 grants the owner of a copyright, with certain limitations, the right to do and to authorize any of the following: the reproduction of the copyrighted work,[5] the preparation of derivative works, the distribution or sale of copies of the copyrighted work, and the work's public performance[6] and display.[7] 17 U.S.C. § 106. A "secondary transmission[8] to the public of a primary transmission[9] embodying a performance ... of

4. "Audiovisual works" are defined in the Act as "works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied." 17 U.S.C. § 101.

5. "Copies" are defined in the Act as "material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term 'copies' includes the material object, other than a phonorecord, in which the work is first fixed." 17 U.S.C. § 101.

6. Under the Act, to "perform" a work "publicly" means to "perform it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered," *or* to "transmit" a performance to a place open to the public, "by means of any device or

process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times." 17 U.S.C. § 101. To "perform" an audiovisual work means "to show its images in any sequence or to make the sounds accompanying it audible." *Id.* To "transmit" a performance "is to communicate it by any device or process whereby images or sounds are received beyond the place from which they are sent." *Id.*

7. Under the Act, to "display" an audiovisual work means to "show individual images nonsequentially." 17 U.S.C. § 101.

8. A "secondary transmission" is "the further transmitting of a primary transmission simultaneously with the primary transmission." 17 U.S.C. § 111(f).

9. A "primary transmission" is "a transmission made to the public by the transmitting facility whose signals are being received and further transmitted by the secondary transmission service, regardless of where or when the performance or display was first transmitted." 17 U.S.C. § 111(f).

a work is actionable as an act of infringement ... if the primary transmission is not made for reception by the public at large but is controlled and limited to reception by particular members of the public." 17 U.S.C. § 111(b).[10] Under the 1976 Act, the defendant may be liable for a "direct" act of copyright infringement if it does or authorizes another to do any of the acts enumerated in § 106. *See* 17 U.S.C. § 501 ("anyone who violates any of the exclusive rights of the copyright owner ... is an infringer of the copyright").

■ It has been suggested that "Congress' use of the phrase 'to authorize' establishes the liability, whether vicarious or as a contributory infringer, of one who does no more than cause or permit another to engage in an infringing act." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.04[A], at 12–63 (1991). This position appears well-taken. The legislative report accompanying the Copyright Act of 1976 explains that under the Act as amended, the copyright holder has the right "to do and to authorize"[11] any of the rights enumerated in section 106. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 61 (1975), *reprinted in* 1976 U.S.Code Cong. & Admin.News at 5659, 5674. The report explains,

> Use of the phrase "to authorize" is intended to avoid any questions as to the liability of contributory infringers. For example, a person who lawfully acquires an authorized copy of a motion picture would be an infringer if he or she engages in the business of renting it to others for purposes of an unauthorized public performance.

*Id.* Given the new language of the statute and the statute's legislative history it appears to this court that Congress created a new form of "direct" infringement when it amended the Act to include the words "to authorize," and that individuals may be contributorily or vicariously liable for such direct acts of infringement.

The change in statutory language, however, has not led to a significant change in the way the courts have dealt with indirect infringers. Under the 1909 Act, the courts developed theories of contributory and vicarious liability for acts of infringement committed by others. *See, e.g., Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159 (2d Cir. 1971); *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir.1963). Despite the change in language in the 1976 Act, the courts have continued to find individuals liable for copyright infringement as contributory or vicarious infringers without limiting such third-party liability to those who have "authorized" others to commit direct acts of infringement. *See, e.g., Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 437–38, 104 S.Ct. 774, 786–87, 78 L.Ed.2d 574 (1984); *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 845–46 (11th Cir.1990); *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 781 (8th Cir.1988). I now turn to examination of those theories of liability.

### B. Third-party or Indirect Liability

■ A defendant may be jointly and severally liable for the direct acts of infringement of others on a theory of contributory or vicarious liability. The courts have been less than precise in their delineation of the contours of contributory versus vicarious liability for copyright infringement. *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 n. 17, 104 S.Ct.

---

**10.** A secondary transmission is not actionable as an act of infringement if (1) it is made by a broadcast station licensed by the Federal Communications Commission (FCC); (2) the carriage of the signals comprising the secondary transmission is required by FCC rules and regulations; *and* (3) the signal of the primary transmitter is not altered in any way by the secondary transmitter. 17 U.S.C. § 111(b)(1)–(3).

**11.** "The word 'authorize' did not appear in the Copyright Act of 1909, but was added by Congress in 1976." *Danjaq, SA v. MGM/UA Com-*

774, 785 n. 17, 78 L.Ed.2d 574 (1984);[12] *Demetriades v. Kaufmann,* 690 F.Supp. 289, 293 (S.D.N.Y.1988); 3 *Nimmer* at § 12.04[A]. Vicarious liability is grounded in the tort concept of respondeat superior, *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2nd Cir.1971), while contributory liability has evolved from the tort concept of enterprise liability, *id.; Demetriades,* 690 F.Supp. at 292–93; *Screen Gems–Columbia Music, Inc. v. Mark–Fi Records, Inc.,* 256 F.Supp. 399, 403 (S.D.N.Y.1966). Below I examine the differences between these two forms of indirect infringement.

### 1. Vicarious Liability

■ A defendant may be vicariously liable for the infringing acts of others when two prerequisites are met: (1) the defendant has the right and ability to supervise the infringing activity of another; and (2) the defendant has an obvious and direct financial interest in exploitation of the copyrighted materials. *Gershwin,* 443 F.2d at 1161–62; *see also Southern Bell Tel. & Tel. v. Association Tel. Directory,* 756 F.2d 801, 811 (11th Cir.1985); *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.,* 845 F.2d 773, 781 (8th Cir.1988); *Columbia Pictures Inc. v. Redd Horne, Inc.,* 749 F.2d 154, 160–61 (3d Cir.1984); *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963). *Cf. Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 886 F.2d 1545, 1553 (9th Cir.) (parent corporation may be liable for infringement committed by its subsidiary if there is a substantial and continuing connection between the two with respect to the infringing acts),

*cert. denied,* 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990). One need not have knowledge that the direct infringer is engaging in infringing conduct to be held vicariously liable. *Gershwin,* 443 F.2d at 1162; 3 *Nimmer* § 12.04[A], at 12–63 n. 14 (collecting cases).

### 2. Contributory Liability

■ A defendant may be contributorily liable for the infringing acts of another when "with knowledge of the infringing activity, [the defendant] induces, causes, or materially contributes to the infringing conduct of another." *Gershwin,* 443 F.2d at 1162. *See also Cable/Home Communication v. Network Productions,* 902 F.2d 829, 845–46 (11th Cir.1990). "[J]ust as benefit and control are the signposts of vicarious liability, so are knowledge and participation the touchstones of contributory infringement." *Demetriades,* 690 F.Supp. at 293. "The standard of knowledge is objective: to know or have reason to know that the product in question is copyrighted and that defendants were violating the copyright laws." *Cable/Home,* 902 F.2d at 845–46. One must make more than a "mere quantitative contribution" to the primary infringement in order to be liable on a theory of contributory liability, *Gershwin,* 443 F.2d at 1162 (quoting *Fortnightly Corp. v. United Artists Television, Inc.,* 392 U.S. 390, 396–97, 88 S.Ct. 2084, 2087–88, 20 L.Ed.2d 1176 (1968)), and "[c]ontributory liability necessarily must follow a finding of direct or primary infringement," *Cable/Home,* 902 F.2d at 845; *see also 3 Nimmer* § 12.04[A], at 12–81.[13]

---

munications Co., 773 F.Supp. 194, 201 (C.D.Cal. 1991).

**12.** In *Sony,* 464 U.S. at 437–38, 104 S.Ct. at 786–87, the Supreme Court uses the terms "vicarious" and "contributory" interchangeably, without differentiating between the two theories of liability. According to the Court, contributory or vicarious liability exists when one who "was in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner." *Id.* at 437, 104 S.Ct. at 786. This definition draws on both the "to authorize" type of direct infringement, and "vicarious" liability, as de-

scribed *infra.* "Contributory" infringement has been applied in cases "involving an ongoing relationship between the direct infringer and the contributory infringer at the time the infringing conduct occurred." *Id.*

**13.** Contributory liability is of two types—"personal conduct that forms part of or furthers the infringement, and contribution of machinery or goods that provide the means to infringe." 3 *Nimmer* at 12–68. One is not liable as a contributory infringer simply because the defendant provides the "'means' to accomplish an infringing activity and encourages that activity through advertisement," *Sony,* 464 U.S. at 436,

As I explain below, Caliente's motion to dismiss requires the court to examine the interplay between the various forms of direct and indirect liability for copyright infringement and the rule that federal courts lack subject matter jurisdiction over claims for infringement which occur outside the United States.

## IV

## SUBJECT MATTER JURISDICTION

■ As a general matter, because the United States copyright laws do not have extraterritorial effect, "infringing acts that take place entirely outside the United States are not actionable in United States federal courts." *Peter Starr Productions Inc. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir.1986).[14] *Compare Zenger–Miller, Inc. v. Training Team, GMBH*, 757 F.Supp. 1062, 1071 (N.D.Cal. 1991) (court lacks subject matter jurisdiction where none of defendants' alleged infringing activities occurred in the U.S.); *and Ahbez v. Edwin H. Morris & Co., Inc.*, 548 F.Supp. 664, 667 (S.D.N.Y.1982) (same); *with National Enquirer, Inc. v. News Group News, Ltd.*, 670 F.Supp. 962, 970 (S.D.Fla.1987) (domestic distribution of 85 copies of newspaper produced abroad sufficient to confer subject matter jurisdiction). Thus, in order for the court to exercise subject matter jurisdiction over plaintiff's claims, plaintiff bears the burden of alleging and proving that the defendant is liable under some theory of direct or vicarious liability for an act of infringement committed in the United States. Below I examine the various ways a defendant may be held liable under these various theories.

■ The court has subject matter jurisdiction over plaintiff's claims for copyright infringement when the defendant is alleged to have "authorized" another to commit an infringing act, so long as the act of authorization occurs in the United States. *Peter Starr*, 783 F.2d at 1442; *see also Thomas v. Pansy Ellen Products, Inc.*, 672 F.Supp. 237, 241 (W.D.N.C.1987) (recovery permitted when domestic defendant's agent authorized a Taiwanese manufacturer, not a defendant in the case, to reproduce plaintiff's copyrighted work abroad by letter sent from the United States). This is true even when the acts authorized by defendant occur outside the United States. *See Peter Starr*, 783 F.2d at 1442 (court has subject matter jurisdiction over plaintiff's claim where defendant is alleged to have authorized, in the United States, extraterritorial acts of infringement of plaintiff's copyright). Moreover, if a defendant's domestic act of infringement permits the further reproduction of the copyrighted material abroad, plaintiff may recover through imposition of a constructive trust impressed on defendant's extraterritorial profits derived from the domestic act of infringement. *Fantasy, Inc. v. Fogerty*, 664 F.Supp. 1345, 1351–52 (N.D.Cal.1987); *see also Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir.1988) ("[t]here is an exception [to the rule against extraterritoriality]—when the type of infringement permits further reproduction abroad—such as the unauthorized manufacture of copyrighted material in the United States"); *Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096 (2d Cir.), *cert. denied*, 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1976)[15] ("[i]t is only when the

104 S.Ct. at 786, when the machinery or goods supplied are capable of commercially significant noninfringing uses, *id.* at 442, 104 S.Ct. at 789.

**14.** In *Peter Starr*, 783 F.2d 1440, plaintiff owned the copyright in a film. Defendant Twin, without Starr's authorization, entered into an agreement purportedly granting Alpha the exclusive right to display the film abroad. Starr sued Twin alleging that Twin infringed Starr's copyright by authorizing Alpha to exhibit the motion picture without Starr's consent. The district court granted Twin's motion to dismiss for lack of subject matter jurisdiction. The Ninth Circuit reversed, holding that Twin could be liable for "authorizing" Alpha's infringement of Starr's copyright. The act of authorization was the signing of the contract between Twin and Alpha which occurred in Los Angeles.

**15.** Both the *Modiin*, 843 F.2d at 73, and *Peter Starr*, 783 F.2d at 1442–43, courts rely on the Second Circuit's decision in *Robert Stigwood*, 530 F.2d at 1101. In *Stigwood*, the court refused to permit recovery of damages arising out of performances in Canada of the musical Jesus Christ Superstar, because the steps taken by

type of infringement permits further reproduction abroad that its exploitation abroad becomes the subject of a constructive trust"); and *Zenger–Miller, Inc. v. Training Team, GMBH,* 757 F.Supp. 1062, 1071 (N.D.Cal.1991) ("an infringing act occurring outside the United States is not actionable in the district courts unless the act is part of, or a consequence of, an *act of infringement* occurring within the United States").

At least one district court has determined that because third-party liability, including liability under a theory of "authorization," is dependent upon the existence of a "direct" act of copyright infringement, a defendant who "authorizes," or otherwise is contributorily or vicariously liable for acts which do not take place in the United States, cannot as a matter of law be liable for copyright infringement. *See Danjaq, S.A. v. MGM/UA Communications Co.,* 773 F.Supp. 194, 201 (C.D.Cal.1991). I respectfully disagree. In *Danjag,* the court considered the question whether "copyright liability may be imposed upon an authorization that does not in fact culminate in a primary infringement of copyright." 773 F.Supp. at 201. Applying Professor Nimmer's view, *see* 3 *Nimmer* § 12.04[A][3][b], at 12–81 to 87, the court concluded that it lacked subject matter jurisdiction over plaintiff's claim that defendant "authorized" another to perform or display copyrighted material abroad because the predicate extraterritorial act of performance or display is not itself actionable. The *Danjag* court sought to distinguish *Peter Starr,* 783 F.2d 1440, arguing that in that case the Ninth Circuit "addressed itself entirely to the question of subject matter jurisdiction and not to the sufficiency of the claim." *Danjag,* 773 F.Supp. at 203. As I now explain, however, the *Danjag* court's attempted distinction fails, since it did not consider the effect of application of 12(b)(1) standards in this circuit to the issue at bar there.

Although it is true that the Ninth Circuit has held that subject matter jurisdiction is proper if the copyright question appears on the face of a well-pleaded complaint, *Effects Assoc., Inc. v. Cohen,* 817 F.2d 72, 73 (9th Cir.1987), as I have explained, where the jurisdictional question and the merits are intertwined, the court treats the motion to dismiss for lack of subject matter jurisdiction under summary judgment standards. *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983). Accordingly, as a matter of course, the *Peter Starr* court was required to address both jurisdiction and merits in the course of disposition. Indeed, in deciding that the court had subject matter jurisdiction over plaintiff's claims, the *Peter Starr* court noted that plaintiff's claim that defendant authorized in the United States the extraterritorial display of plaintiff's work, "states a cause of action under the plain language of 17 U.S.C. §§ 106 and 501." *Peter Starr,* 783 F.2d at 1442–43.

This court, of course, is bound by the Ninth Circuit's determination in *Peter Starr* that subject matter jurisdiction exists and that plaintiff states a claim when plaintiff alleges that defendant, in the United States, has authorized the display, performance, or copying abroad of plaintiff's copyrighted work. Moreover, as discussed *infra,* because "authorization" is itself actionable as a "direct" act of copyright infringement, the fact that the act "authorized" occurs abroad is irrelevant to the question whether the court has subject matter jurisdiction over a claim for authorization.

As I have explained, under the 1976 Act the holder of a copyright enjoys the right "to do" or "to authorize" certain acts; violation of either of these rights is a "direct" act of infringement. In order for the court to exercise subject matter jurisdiction over plaintiff's claims against Caliente premised

---

defendants in the United States in preparation for the Canadian performances did not themselves constitute infringements under the Act. *Id.* The court ruled that only when the defendants' domestic acts permit further reproduction abroad does the work's exploitation abroad

becomes the subject of a constructive trust. *Id.* The *Stigwood* court rejected the argument that where the defendant's acts constitute an integral part of the extraterritorial infringing act the defendants should be held liable for their foreign actions. *Id.*

on direct infringement, plaintiff bears the burden of showing that the "direct" acts of infringement for which it seeks to hold Caliente liable occurred in the United States.

■■ A defendant also may be liable for infringement if that defendant is either contributorily or vicariously liable for another's direct act of infringement. To satisfy the jurisdictional requirement that the defendant commit an act of infringement in the United States, the plaintiff must show only that the direct act of infringement for which defendant is contributorily or vicariously liable occurred in the United States. *Cf. P & D Int'l v. Halsey Publishing Co.,* 672 F.Supp. 1429, 1432 (S.D.Fla.1987) ("to the extent part of an act of infringement occurs within this country, although such act be completed in a foreign jurisdiction, those who contributed to the act in the United States may be liable under United States copyright law").[16] Plaintiff need not show that defendant's acts which give rise to contributory or vicarious liability occurred in the United States. Such a requirement is not mandated by the doctrine of nonextraterritoriality and would confound the questions of subject matter and personal jurisdiction. Subject matter jurisdiction requires the court to determine whether a claim actionable in this court has been stated; personal jurisdiction requires the court to determine whether a particular defendant has sufficient contacts with the forum state to permit the court to exercise power over that defendant. Put another way, it is possible for a defendant to commit acts outside the United States sufficient to find it contributorily or vicariously liable for acts of infringement committed by others within the United States, but the defendant's conduct might not be sufficient to permit the court to exercise personal jurisdiction over the defendant. Requiring that defendant's acts giving rise to contributory or vicarious liability for acts of copyright infringement of others must occur in the United States confuses the minimum contacts analysis necessary to determine personal jurisdiction with the subject matter jurisdiction extraterritoriality analysis.

## V

### ANALYSIS OF PLAINTIFF'S CLAIMS

Applying summary judgment standards to the question of subject matter jurisdiction, plaintiff bears the burden of showing, at a minimum, that genuine issues of material fact exist concerning whether Caliente itself committed a direct act of copyright infringement in the United States, or whether Caliente is vicariously or contributorily liable for direct acts committed in the United States by others. I turn first to plaintiff's arguments concerning Caliente's direct liability.

### A.  *Direct Liability*

■■ Plaintiff asserts that "between 1986 and 1988, Caliente operated off-track betting locations in Mexico which displayed by satellite simulcast ... ITSI's copyrighted television shows." Plaintiff's first memorandum in opposition to defendant's motion to dismiss at 2:15–18. Plaintiff asserts that Caliente thereby infringed ITSI's right "to do or to authorize" the public display of ITSI's shows. *Id.* at 17:14–23; 18:15–16.[17]

---

16. In *P & D Int'l,* 672 F.Supp. 1429, plaintiff owned the copyright in a videotape about the Virgin Islands. Defendant Halsey copied the film in Florida at the "behest" of defendant Cunard. Cunard then showed the film aboard its cruise ships outside the territory of the United States. Cunard asserted that the court lacked subject matter jurisdiction over plaintiff's claims against Cunard. Relying on *Peter Starr,* 783 F.2d 1440, the *P & D Int'l* court held that because "an infringing act is alleged to have occurred in the United States," the court had subject matter jurisdiction over plaintiff's claims against Cunard. 672 F.Supp. at 1433. As plaintiff points out, it is unclear from the

court's opinion what the "infringing act" was: Halsey's act of copying, or Cunard's "behest" in Florida that the copy be made. It appears to this court that the domestic act of infringement for which Cunard allegedly was contributorily liable was Halsey's act of copying the video in Florida. As I have explained *infra,* the court lacks subject matter jurisdiction unless plaintiff shows that defendant is liable—directly or indirectly—for a direct act of infringement in the United States.

17. It appears to the court that under the Copyright Act plaintiff alleges a claim for unauthorized "performance" rather than "display" of its

To the extent plaintiff seeks to hold Caliente liable for the unauthorized "performance" or secondary transmission of ITSI's shows in Mexico, the court lacks subject matter jurisdiction over those claims. The very nature of this claim precludes plaintiff from producing evidence from which a reasonable juror could conclude that Caliente performed or transmitted ITSI's shows in the United States.

Plaintiff also appears to argue that Caliente "authorized" the display of ITSI's shows abroad, and that the act of authorization—execution of contracts with VSA, LACF or CARF—took place in the United States. The argument, as a matter of logic, cannot lie. The import of the argument is that Caliente authorized itself to perform ITSI's copyrighted works. While VSA, LACF or CARF might be liable for authorizing Caliente's extraterritorial performance of ITSI's shows, Caliente cannot authorize itself to perform those shows.

### B. *Indirect or Third-party Liability*

As I have explained, the court may exercise subject matter jurisdiction over plaintiff's claims against Caliente if plaintiff can point to evidence from which a reasonable juror could conclude that Caliente is either contributorily or vicariously liable for acts of copyright infringement committed by others in the United States. I turn now to analysis of each asserted basis of liability.

#### 1. Vicarious Liability

Plaintiff argues that Caliente is vicariously liable for direct acts of copyright infringement committed in the United States by VSA. In opposing Caliente's motion for summary judgment, plaintiff bears the burden of producing evidence from which a reasonable juror could conclude that: (1) Caliente had the right and ability to supervise the infringing activity of VSA; and (2) Caliente had an obvious and direct financial interest in VSA's exploitation of copyrighted materials. *See Gershwin*, 443 F.2d at 1161–62. Plaintiff need not show that Caliente had knowledge that VSA was engaging in infringing conduct in order to establish Caliente's vicarious liability. *See id.* at 1162.

Plaintiff argues that pursuant to the terms of Caliente's contract with VSA, Caliente retained VSA as its agent to commit infringing acts in the United States.[18] While plaintiff does not specify which direct acts of infringement VSA committed in the United States, the court will assume that VSA is liable for the "secondary transmission" of ITSI's works and/or for "authorizing" Caliente to perform ITSI's works abroad. While Caliente may have had a financial interest in VSA's infringing acts as the ultimate beneficiary of those acts, there is no evidence that Caliente had the right or ability to supervise or control VSA's acts. Rather, the evidence is that VSA had access to and controlled ITSI's signal before and after any contract was entered into between Caliente and VSA. A similar analysis would apply to any claim that plaintiff might make that Caliente is vicariously liable for LACF or CARF's infringing acts.

#### 2. Contributory Liability

Plaintiff also argues that Caliente may be contributorily liable for acts of copy-

---

copyrighted work. To "perform" an audiovisual work means "to show its images in any sequence," 17 U.S.C. § 101, while to "display" a work means to "show individual images sequentially," *id.* Plaintiff alleges that its shows were transmitted or performed simultaneously with the running of the horse races, and thus the images were shown in sequence. It appears that for the purpose of determining whether defendant's motion should be granted this is a distinction without a difference.

**18.** Plaintiff's evidence is as follows: In August 1985, Caliente contracted with VSA, to receive from VSA and distribute to Caliente's gaming establishments "certain audio-visual signals of live horse racing programs, sporting events and related services." Caliente–VSA contract at 2; Spector dep. at 64–65. Under the contract, VSA provided Caliente with a coded or scrambled signal of ITSI's shows, live satellite transmission of the shows, and the means and equipment to convert the signal into useable video images for viewing at sites in Mexico. Spector dep. at 42, 44. VSA interacted on Caliente's behalf with various governmental agencies "to make sure that they [Caliente] met all of the various legal requirements and all of the various efforts that were involved to make this activity take place." *Id.* at 69:18–21. The Caliente–VSA contract disclaims any agency relationship with Caliente. Caliente–VSA contract at 4 ¶ 4.

right infringement committed by CARF, LACF or VSA in the United States. Plaintiff bears the burden of producing evidence from which a reasonable juror could find that Caliente (1) knew or should have known that CARF, LACF and/or VSA were infringing ITSI's copyright, and (2) induced, caused, or materially contributed to CARF, LACF and/or VSA's infringing conduct. *See Gershwin,* 443 F.2d at 1162.

Plaintiff has failed to point to any evidence from which a reasonable juror could conclude that Caliente knew or should have known that CARF, LACF and/or VSA were infringing ITSI's copyright when they copied, transmitted, performed, or authorized the extraterritorial performance of ITSI's shows. Indeed, plaintiff acknowledges that Caliente's state of mind is unknown. *See* Plaintiff's supplemental memorandum in opposition at 29. While it is true that, as an ordinary matter, summary judgment should be approached cautiously when issues concerning mental state or motivation are involved, plaintiff must produce some evidence sufficient to permit an inference to be drawn in its favor. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1231 (E.D.Cal.1985), *aff'd,* 810 F.2d 898 (9th Cir.1987). ITSI simply has failed to do so. Plaintiff's unsupported assertion is insufficient as a matter of law to meet plaintiff's summary judgment burden.

Because plaintiff has failed to demonstrate that Caliente committed a direct act of copyright infringement in the United States, or that Caliente is contributorily or vicariously liable for acts of copyright infringement committed by others in the United States, the court lacks subject matter jurisdiction over plaintiff's claims against Caliente.

## VI

## APPLICATION OF MEXICAN COPYRIGHT LAW

■ Plaintiff suggests that if Caliente is not liable for an act of infringement which occurred in the United States, plaintiff should be given leave to amend its complaint to state a cause of action against Caliente under Mexican copyright laws for acts Caliente committed in Mexico. This position has gained some support among academics. *See* Goldstein, *Copyright Principles, Law & Practice,* § 16.3 ("[s]ubject to jurisdictional requirements, a copyright owner may sue an infringer in the United States courts even though the only alleged infringement occurred in another country"); 3 *Nimmer* § 17.03, at 17–21 to 17–22 (it is "arguable that an action may be brought in [district] court for infringement of a foreign copyright law").[19] Although one district court has accepted jurisdiction over an action for foreign copyright infringement, *see London Film Productions, Ltd. v. Intercontinental Communications, Inc.,* 580 F.Supp. 47 (S.D.N.Y. 1984), I discern no clear authority for exercising such jurisdiction. *See generally* David R. Toraya, Note, "Federal Jurisdiction Over Foreign Copyright Actions—An Unsolicited Reply to Professor Nimmer," 70 *Cornell Law Rev.* 1165 (1985). Moreover, it appears to me that American courts should be reluctant to enter the bramble bush of ascertaining and applying foreign law without an urgent reason to do so.[20]

**19.** Professor Nimmer argues, citing *Vanity Fair Mills v. T. Eaton Co.,* 234 F.2d 633 (2d Cir.), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956), that because copyright infringement constitutes a transitory cause of action, it may be adjudicated in the courts of a sovereign other than the one in which the cause of action arose. In *Vanity Fair,* a patent and trademark case, the court declined to apply Canadian law because United States courts should not determine the validity of administrative acts of foreign officials in granting patents and trademarks. 234 F.2d at 647. Professor Nimmer suggests that this is not an issue in copyright cases because "under virtually all foreign copyright laws there

are no administrative formalities which must be satisfied in order to create or to perfect a copyright." 3 *Nimmer,* at § 17.03. Assuming that Professor Nimmer is right, that generalization does not answer the question whether in any given case the particular foreign law does have administrative formalities which must be satisfied.

**20.** Even if subject matter jurisdiction did exist over plaintiff's claim for violation of Mexican copyright law, the court would decline to exercise jurisdiction on forum non conveniens grounds, as codified at 28 U.S.C. § 1404(a), because exercise of jurisdiction over such a claim

No such reason has been tendered in this case and, as a matter of common sense and judicial self-restraint, I think it appropriate to decline plaintiff's invitation.

### VII

### ORDER

For all the foregoing reasons, plaintiff's claims for copyright infringement against defendant Caliente are DISMISSED for lack of subject matter jurisdiction.

IT IS SO ORDERED.

would work an extreme hardship on the court in discerning and applying Mexican law. *See Papers Operations Consultants Int'l Ltd. v. SS*

*Hong Kong Amber,* 513 F.2d 667, 670 (9th Cir. 1975).