**Mary L. METZKE and Designs by Metzke, Inc., Plaintiffs,**

v.

**The MAY DEPARTMENT STORES COMPANY, Defendant.**

**Civ. A. No. 89–1334.**

United States District Court, W.D. Pennsylvania.

March 10, 1995.

Frank Mast, Frank Mast & Associates, Pittsburgh, PA, Frederick M. Morgan, Jr., Cincinnati, OH, for plaintiffs.

Frederick B. Ziesenheim, Michael I. Shamos, Raymond J. Harmuth, Webb, Burden, Ziesenheim & Webb, Pittsburgh, PA, for defendant.

## OPINION

COHILL, District Judge.

Before the Court is a motion for partial summary judgment filed by defendant The May Department Stores Company (May) in response to the second amended complaint filed by plaintiffs Mary L. Metzke and Designs by Metzke, Inc. The second amended complaint has four counts: copyright infringement under 17 U.S.C. § 101 *et seq.* (Count I), trademark infringement and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (the "Lanham Act counts") (Counts II, III), and an apparent request for willful infringement damages and attorney's fees under 17 U.S.C. §§ 504, 505 (Count IV). By its motion, May asks us to dismiss Counts I, II, and IV.

## I. *Background*

### A. *Introduction*

Plaintiff Mary L. Metzke, and her family, own Designs by Metzke, Inc. (DbM), a manufacturer of pewter-based gift items that Ms. Metzke co-founded in the 1960s. In the early 1980s, DbM sold potpourri jars that were designed by Ms. Metzke. By all accounts, Ms. Metzke's potpourri jars were extremely popular with consumers because of their high quality and uniqueness.

During the late 1980s, Ms. Metzke's jars were sold through DbM's own mail-order catalog and in numerous retail store divisions owned by May. In mid-1989, Ms. Metzke discovered that several of May's retail store divisions were allegedly selling "knock-off" potpourri jars; that is, jars manufactured to copy Ms. Metzke's jars but without license or other right to do so. At least one retail store sold the alleged knock-offs from a display labeled "Metzke Potpourri." Tr. of Prelim.Inj. Hearing, June 27, 1990, at 37–38.

As a result of May's selling the alleged knock-offs, the Honorable Paul A. Simmons issued a preliminary injunction on July 26, 1990, enjoining May from selling or distributing several versions of the items. On September 28, 1990, Judge Simmons recused from this case, and it was then transferred to the Honorable Timothy K. Lewis, and later to the undersigned.

### B. *The alleged infringing conduct*

May is comprised of numerous operating divisions, including its retail divisions. May is also connected with two entities relevant to this case: May Department Stores International Inc. (MDSI), which has offices in Taiwan and other cities outside the United States; and a corporate division of May, May Merchandising Corporation (MMC), which at relevant times had offices in New York, New York and is now located at May's corporate headquarters in St. Louis, Missouri.

MDSI's Taiwan office apparently coordinates Taiwanese vendors for MMC and negotiates contracts between MMC and the vendors. MMC purportedly is a conduit for May's retail divisions for products manufactured in countries foreign to the United States. Retail-division buyers must purchase any imported goods through MMC. MMC buyers go on semi-annual buying trips to the Orient in search of merchandise to import and sell at its retail divisions. MMC buyers obtain sample goods and display the goods at semi-annual "buying events," attended by retail-division buyers.

During MMC's June 1988 buying trip, a retail-division buyer, Natalie Nelson, met with persons representing a Taiwanese company named Maru Fung. Ms. Nelson agreed to send samples of Ms. Metzke's original copyrighted works to Maru Fung; Maru Fung proceeded to copy them. Def.'s Mem.

in Reply at 2. MMC's marketing representative in 1988, Nancy Sacani, denied that any copies of Ms. Metzke's products were sent to Taiwan, but Ms. Nelson did order her assistant to "[s]end samples over so that they get this idea [how to make potpourri jars]." Dep. of Natalie Nelson at 97.

Samples of Maru Fung's alleged copies of Ms. Metzke's works were shown to giftware buyers at an August 1988 corporate meeting, where buyers remarked that the Maru Fung products "look very similar" to Ms. Metzke's products and that "we can get the merchandise cheaper" from Maru Fung. Dep. of Janet Hammer at 45. In October 1988, May's retail buyers ordered 25,000 units of Maru Fung's products, and offered them for sale to the consuming public. The orders indicated that MDSI was ordering "on behalf of our principle [sic]" with the "New York Rep." listed as "Nancy Sacani." Plfs.' Br. in Opp. at Ex. 8.

## II. *Discussion*

■ A summary judgment may be granted only if the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *Boyle v. Governor's Veterans Outreach & Assist. Ctr,* 925 F.2d 71, 75 (3d Cir.1991). The facts must be viewed in the light most favorable to the non-moving party. *Bechtel v. Robinson,* 886 F.2d 644, 647 (3d Cir.1989). The allegations of the party opposing the motion must be taken as true, and when these allegations conflict with those of the moving party, the former must receive "the benefit of the doubt." *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

May advances two arguments in support of its motion for partial summary judgment. First, it contends that Ms. Metzke's products at issue are not infringeable because they do not display a legally sufficient notice of copyright. Second, May asserts that it cannot be liable for any copyright- or trademark-infringing conduct of Maru Fung or other retailers unrelated to May.

### A. *Ms. Metzke's copyright notice is not inadequate as a matter of law*

■ In 1988, the United States Congress passed the Berne Convention Implementation Act, Pub.L. 100–568, 102 Stat. 2853–54 (Oct. 31, 1988), which eliminated the notice requirement for all works copyrighted on or after March 1, 1989. All works published before March 1, 1989, such as all of the disputed works in this case, *see* Def.'s M. for Part. Summ.J. at Exs. C, D, E, F, must display a valid copyright notice to be protected under federal copyright law.

■ The notice "shall be affixed to the copies in such manner as to give reasonable notice of the claim of copyright." 17 U.S.C. § 401(c) (1977). Works published without the notice, and not later cured, may be copied with impunity. *Shapiro & Son Bedspread Corp. v. Royal Mills Associates,* 764 F.2d 69, 72 (2d Cir.1985). The notice must be "legible to an ordinary user of the work under normal conditions of use" and must not be "concealed from view upon reasonable examination." 37 C.F.R. § 201.20.

■ According to May, the copyright notice on Ms. Metzke's works are "tiny[ and] essentially illegible" and therefore do not give reasonable notice of copyright as a matter of law. Def.'s Br. at 8, 9. We disagree. Notice is sufficient even where it is legible only to "someone with excellent vision," *Kieselstein–Cord v. Accessories by Pearl, Inc.,* 489 F.Supp. 732 (S.D.N.Y.), *rev'd on other grounds,* 632 F.2d 989 (2d Cir.1980), or if finding it requires "close examination," *Trifari, Krussman & Fishel, Inc. v. Charel Co.,* 134 F.Supp. 551, 553 (S.D.N.Y.1955).

With its summary judgment motion, May provided four exemplars of Ms. Metzke's allegedly infringed works ostensibly to show the insufficiency of the copyright notice. *See* Def.'s Br. at Exs. G, H, I, J; *see also* Def.'s Mem. in Reply at Exs. 1–10. We found the copyright notice on each of the four works within a reasonably short time. A reasonable jury should have the opportunity to do the same.

**B.** *Vicarious liability and contributory infringement*

May argues that it cannot be liable to the plaintiffs under theories of either vicarious liability or contributory infringement.

**1.** *Vicarious liability*

██ A defendant may be vicariously liable for the infringing acts of others where the defendant possessed (1) the right and ability to supervise the infringing activities of another, and (2) an obvious and direct financial interest in those activities. *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 834 (8th Cir.1992) (citation omitted).

██ May has submitted affidavits attesting that it had no corporate ties to its supplier Maru Fung, or to any retailer that is not a part of The May Department Stores Company, and that it has no financial interest in Maru Fung's or other retailers' sales. Def.'s Br. at Ex. B. Ms. Metzke admits as much: "Plaintiffs do not doubt that by the time the monster was unleashed—after Maru Fung was given plaintiff's [sic] copyrighted works with no contractual restrictions on distribution imposed by May—May had no control over its contractor." Plfs.' Br. in Opp. at 23.

But according to Ms. Metzke, where a company such as May has the *"right ... to* police the activities of a co-infringer, but fails to do so, courts have not hesitated to apply principles of vicarious copyright liability to that defendant." Plfs.' Br. in Opp. at 23. Ms. Metzke did not refer us to any case law finding vicarious liability where an entity, such as May, supplies to-be-copied items to an entity, such as Maru Fung, over which May had no control.

On the record before us, including May's uncontroverted affidavits, we find that May did not have the "right and ability to supervise" Maru Fung's activities. Even if May supplied Ms. Metzke's works as a prototype for Maru Fung's copying, May cannot be deemed in control of Maru Fung as contemplated by the doctrine of vicarious copyright infringement. Because we find that Ms. Metzke did not show that May met the first part of the two-part conjunctive test for vi-

carious liability, we need not address the second part.

**2.** *Contributory infringement*

██ A party may be liable for contributory infringement where "with knowledge of the infringing activity, [it] induces, causes or materially contributes to the infringing activity of another." *Columbia Pictures Indust., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir.1984). The party may be liable where it "[k]nows, or ha[s] reason to know," of the infringement. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 845 (11th Cir.1990) (footnote, quotations, and citation omitted). For contributory infringement to attach, there must be an underlying infringement. *See, e.g., Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 526, 92 S.Ct. 1700, 1706, 32 L.Ed.2d 273 (1972); *Cable/Home Communication v. Network Productions*, 902 F.2d 829, 845 (11th Cir.1990); 3 David Nimmer & Melville B. Nimmer, Nimmer on Copyrights § 12.04[A][2][b], at 12–81 (1994).

May advances two arguments against contributory infringement. First, it argues that it cannot be liable for contributory infringement because there was no direct, or underlying, infringement. According to May, the alleged direct infringer, Maru Fung, as a Taiwanese entity, cannot be an infringer because the United States copyright laws have no extraterritorial effect. Second, May contends that it cannot be liable for any infringement by other United States retailers that purchased Metzke knock-offs from Maru Fung because it had no knowledge of such sales.

██ We agree with May that United States copyright law generally has no extraterritorial application. *See, e.g., Subafilms, Ltd. v. MGM–Pathe Communications Co.*, 24 F.3d 1088, 1095–98 (9th Cir.) (en banc), *remanded*, 31 F.3d 812 (9th Cir.), *cert. denied*, 1994 US LEXIS 8040 (1994); *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir.1988); 3 Nimmer & Nimmer, § 12.04[A][2][b], at 12–86. And where the alleged infringement took place both in and outside the United States, the copyright law reaches only the United States infringement.

*Update Art,* 843 F.2d at 73. Thus May cannot be contributorily liable for Maru Fung's actions that occurred outside the United States.

■■■ May can be liable, however, if it knew or should have known that Maru Fung's copies of Ms. Metzke's designs would be distributed by non-May retailers in the United States. 3 Nimmer & Nimmer, § 12.04[A][2][b], at 12–74–75. To refute this possibility, May contends that "[t]he Brickson Affidavit establishes that May had no such knowledge," Def.'s Mem. in Reply at 6, and that "May had no knowledge, or reason to know, that Maru Fung would make copies of the Metzke articles for, or sell them to, the Other Vendors," *id.* at 2 (citing Brickson Aff. ¶¶ 2, 3). Continuing, May contends that "Plaintiffs endorse May's assertion that it did not intend for others to sell the Maru Fung copies. Therefore, May could not have any reason to know that Maru Fung would undermine May by selling to the Other Vendors." Def.'s Mem. in Reply at 6 (citations omitted).

By his affidavit, Richard A. Brickson, senior counsel to May, offers, in pertinent part, that "May has no corporate ties to Maru Fung," or "any interest in encouraging its suppliers to sell any product to competing retailers," Brickson Aff. ¶ 2, and that "May has no rights to control the specific merchandise that its competitors buy or sell or the specific vendors from whom its competitors choose to purchase merchandise," *id.* ¶ 3.

May's interpretation of the Brickson affidavit is untenable, for its conclusion that May could have no reason to know that Maru Fung would sell to other vendors does not follow from its premise that May did not "intend" for other vendors to sell Maru Fung copies. In other words, whether May intended that Maru Fung sell Metze knock-offs to other United States retailers strikes us as a *non sequitur* with respect to whether May had reason to know that Maru Fung would do so.

We fail to see how the Brickson affidavit shows May neither knew nor had reason to know that Maru Fung, May's handpicked copier, would sell only to May. Indeed, we would be surprised to learn that May had no reason to know that Maru Fung would also sell the knock-offs to other retailers in the United States, where the products had been selling briskly. The record is devoid of any evidence, moreover, that Maru Fung agreed to sell exclusively to May.

At most, the Brickson affidavit establishes that May had no reason to *want* Maru Fung to sell potpourri products copied from Ms. Metzke to May's competing retailers in the United States; it does not establish that May did not know and had no reason to know that Maru Fung did so.

## C. *The Lanham Act claims*

In Count II of her second amended complaint, Ms. Metzke alleges that May sold copies of her products that "falsely describe and represent that the reproductions are the goods of plaintiffs." Second Amended Compl. ¶ 16. In Count III, Ms. Metzke contends that May "has used ... false designations of origin ... which are likely to cause confusion." *Id.* ¶ 21.

■■■ Counts II and III of Ms. Metzke's second amended complaint, as best we can tell, are claims for trademark infringement or false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Damages are only available where the plaintiff has shown a likelihood of consumer confusion and actual consumer reliance on the allegedly misleading representations. *Resource Developers, Inc. v. Statue of Liberty—Ellis Island Found., Inc.,* 926 F.2d 134 (2d Cir.1991).

Ms. Metzke's Lanham Act claims apparently are premised on, among other things, a display at one of May's retail stores, May D & F in Denver, Colorado, where knock-offs were displayed for sale commingled with authentic Metzke products under a sign reading "Metzke Potpourri." Plfs.' Mem. in Opp. at 6. May contends that no consumer could be confused over which items were authentic because the Metzke copyright notice was illegible on Ms. Metzke's products. As explained above in Part II.A., we do not find that the copyright notices are inadequate as a matter of law, and thus we will likewise

deny summary judgment on the Lanham Act claims.

### D. *Willful infringement and attorney's fees*

Ms. Metzke concedes that she is not entitled to statutory damages or attorney's fees in this case. Plfs.' Mem. in Opp. at 32; *see also* Order of Court March 19, 1991. Thus we will dismiss count IV to the extent that it seeks statutory damages or attorney's fees.

### III. *Conclusion*

The copyright notices on Ms. Metzke's products are not inadequate as a matter of law because a reasonable fact finder may conclude that the notices are "legible to an ordinary user of the work under normal conditions of use...." 37 C.F.R. § 201.20. May is not vicariously liable for any infringing activities of Maru Fung occurring outside the United States because it did not have the right to control Maru Fung.

There is a genuine issue of material fact as to whether May is a contributory infringer because it may have known or had reason to know that Maru Fung would sell illegal Metzke copies to other retailers that would, in turn, sell the copies in the United States. We will deny summary judgment as to the Lanham Act claims because consumers may have been confused by the commingling of Metzke products with Metzke knock-offs. Finally, we will grant summary judgment with respect to count IV to the extent that it seeks statutory damages or attorney's fees.

An appropriate order follows.

### ORDER

AND NOW, to-wit, this 10th day of March 1995, for the reasons set forth in the accompanying opinion, it is hereby ORDERED, ADJUDGED, and DECREED that the motion for partial summary judgment (Doc. 54) filed by defendant The May Department Stores Company, be and hereby is DENIED in part, and GRANTED in part, as follows:

1. The motion is denied as to the claim for contributory copyright infringement in Count I;

2. The motion is denied as to the apparent Lanham Act claims in Counts II and III; and

3. The motion is granted as to vicarious liability for copyright infringement in Count I and granted as to statutory damages and attorney's fees in Count IV.