**Ralphe A. ARMSTRONG, individually and d/b/a Anna Music, Plaintiff,**

v.

**VIRGIN RECORDS, LTD., et al., Defendants.**

**No. 98 CIV. 4645 RWS.**

United States District Court, S.D. New York.

April 3, 2000.

**630**

Abelman Frayne & Schwab, New York City (Robert C. Osterberg, of Counsel), for Plaintiff.

Pryor Cashman Sherman & Flynn, New York City (Donald S. Zakarin, Lisa M. Buckley, Suzan Arden, of Counsel), for Defendants Virgin Records Ltd., Virgin Records America, Inc., Island Music, Ltd., Robert Del Naja, Grantley Marshall and Andrew Vowles d/b/a Massive Attack.

Parcher, Hayes & Snyder, New York City (Orin Snyder, Craig A. Isaacs, of Counsel), for Defendant EMI Group, Inc.

Notaro & Michalos, Orangeburg, NY (Angelo Notaro, John Zaccaria, of Counsel), for Defendant Adidas America, Inc.

Davis & Gilbert, New York City (Howard R. Weingrad, Jennifer Tafet Klausner, of Counsel), for Defendant Leagas Delaney London Ltd.

### OPINION

SWEET, District Judge.

Plaintiff Ralphe A. Armstrong ("Armstrong") has moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment striking various affirmative defenses raised by the defendants in this action. In turn, defendants EMI Group, plc ("EMI Group"), Virgin Records Ltd. ("Virgin UK"), Virgin Records America ("Virgin America"), Island Music, Ltd. ("Island"), and Robert Del Naja, Grantley Marshall, and Andrew Vowles, jointly doing business as "Massive Attack" ("Massive Attack"), have moved for summary judgment dismissing or delimiting a number of Armstrong's claims. For the reasons set forth below, these motions are granted in part and denied in part.

### Facts and Prior Proceedings

For the purposes of the motions presently under consideration, the facts set forth below are not in serious dispute, except where otherwise indicated.

Armstrong is a professional entertainer and well-regarded jazz musician, as well as a college music professor. In the 1970's, he made various recordings with an ensemble known as the Mahavishnu Orchestra.

Massive Attack is a musical group whose members are British citizens residing in the United Kingdom. In 1990, Massive Attack recorded an album entitled "Blue Lines" ("the album" or "Blue Lines") in England pursuant to a recording agreement with Virgin UK, a corporation organized under the laws of the United Kingdom. Virgin UK's principal offices are located in London.

One of the tracks on "Blue Lines" was a recording of a musical composition entitled "Unfinished Sympathy" ("Unfinished Sympathy" or "the song"). That composition was credited as being written by the members of Massive Attack, as well as two other individuals—J. Sharp ("Sharp") and S. Nelson ("Nelson"). Neither Sharp nor Nelson is a party to this action. Island, a United Kingdom corporation with its principal offices in London, obtained worldwide copyrights for Massive Attack's compositions, including "Unfinished Sympathy."

The "Blue Lines" album was released in 1991 by Virgin UK in England and Ireland. Under an agreement between Virgin UK and EMI Services, which is not a party to this action, the master recordings embodied on "Blue Lines" were in turn licensed by EMI Services to other companies around the world for manufacturing and distribution. EMI Services ultimately licensed defendant Virgin America to manufacture and distribute the album in the United States.

In addition to the licenses concerning master recordings of the album, mechanical licenses were also obtained to enable exploitation of the compositions contained on "Blue Lines." Virgin UK obtained a mechanical license for "Unfinished Sympa-

thy" from the Mechanical Copyright Protection Society ("MCPS"), which acted on behalf of Island. Virgin America obtained a mechanical license from The Harry Fox Agency ("Fox") on behalf of Songs of Polygram International, Inc. ("Songs of Polygram") and WB Music Co. ("WB"), two of the subpublishers of the composition in the United States. Virgin America's right to manufacture and distribute "Blue Lines" was to be limited to the United States and its territories and possessions.

Subsequent to its release on "Blue Lines," "Unfinished Sympathy" enjoyed significant success. In 1993, "Unfinished Sympathy" was included in the motion picture "Sliver," which featured actress Sharon Stone, as well as on the soundtrack album of that film. The "Sliver" soundtrack album subsequently achieved "gold" record status, due to its brisk sales in the United States.

As with "Blue Lines," the "Sliver" soundtrack album was released in the United Kingdom and Ireland by Virgin UK, and in the United States by Virgin America. Mechanical licenses were issued in the United Kingdom and Ireland by MCPS, on behalf of Island, and in the United States by Fox, on behalf of the United States publishers of the composition.

Additionally, in 1996, defendant Leagas Delaney ("Delaney") licensed "Unfinished Sympathy" for use in a television commercial it ultimately produced for defendant adidas America ("adidas").

On July 1, 1998, Armstrong filed his complaint in this action, alleging three causes of action: (1) a claim for copyright infringement under the Copyright Act; (2) a claim for infringement under unspecified "international" copyrights; and (3) a Lanham Act claim against all defendants other than adidas and Leagas Delaney. More specifically, Armstrong alleged that Massive Attack's recording of "Unfinished Sympathy" contains an infringing sample from a composition recorded by the Mahavishnu Orchestra on its 1978 album "In-

ner Worlds." According to Armstrong, that composition, entitled "Planetary Citizen," was created and written by Armstrong prior to 1975.

On August 23, 1999, Armstrong moved for an order, pursuant to Rule 56(d), Fed. R.Civ.P., striking various of the defendants' affirmative defenses based upon the statute of limitations, laches, waiver, estoppel, and lack of subject matter jurisdiction. In addition to submitting opposition to that motion, several of the defendants in this action cross moved for partial summary judgment. By motion filed on September 30, 1999, defendant EMI Group moved for an order, pursuant to Rule 56, dismissing Armstrong's Lanham Act claim in its entirety, as well as dismissing Armstrong's claim under the Copyright Act to the extent that it seeks recovery for any infringement occurring prior to July of 1995. By motion filed on October 7, 1999, defendants Virgin UK, Virgin America, Island, and Massive Attack (collectively the "Virgin/Island Defendants" for lack of a more appropriate moniker) similarly moved for (1) summary judgment dismissing all claims against Virgin UK and Island for lack of subject matter and personal jurisdiction; (2) summary judgment dismissing Armstrong's foreign copyright claims and Lanham Act claims against Massive Attack in their entirety for lack of subject matter jurisdiction; and (3) partial summary judgment dismissing Plaintiff's claims under the Copyright Act for any period prior to July of 1995, and dismissing Armstrong's Lanham Act claim in its entirety. On October 14, 1999, Armstrong also filed a motion to strike various affidavits submitted by EMI Group and the Virgin/Island Defendants (collectively the "moving defendants") in connection with the motions presently under consideration.

While defendants adidas and Leagas Delaney did not follow suit and submit their own motions for partial summary judgment, they have submitted opposition to Armstrong's Rule 56 motion.

Oral argument on these respective motions was heard on October 28, 1999, at which time they were deemed fully submitted.

### Discussion

The principal questions presented are (1) whether subject matter jurisdiction could exist over Armstrong's copyright claims, both foreign and domestic; (2) whether this Court could possess personal jurisdiction over defendants Island and Virgin UK; (3) whether any or all of Armstrong's claims under domestic copyright law are necessarily barred by the relevant statute of limitations; (4) whether Armstrong's claims could be barred by the equitable defenses of laches, waiver, or estoppel; and (5) whether Armstrong's Lanham Act claim can withstand challenge. While Armstrong has also moved, on evidentiary grounds,[1] to strike various portions of the record developed by the defendants, the merits of that motion shall not be separately addressed, since the nature of the Court's inquiry automatically requires an evaluation of the potential admissibility and relevancy of the parties' submissions.

As it has often been observed, summary judgment is appropriate only where the evidence is such that a reasonable jury could not return a verdict in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under Rule 56(c), Fed.R.Civ.P., it shall be rendered "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Second Circuit has explained:

"As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." However, where the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim.

Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir.1991) (quoting Brady v. Town of Colchester, 863 F.2d 205, 210 (2d Cir.1988)) (internal citations omitted).

It is worth noting at the outset that both Armstrong and the defendants have, at points, noted that formal discovery has yet to commence in this action, and that this failure to obtain discovery prevents resolution of certain of the matters presently before the Court. Predictably, the parties make this point at certain junctures but not others, depending upon the claim being made.

As discussed below, this failure to obtain discovery prior to engaging in motion practice has rendered the moving parties' respective motions of questionable utility. Other than granting the Virgin/Island and EMI Group Defendants' request to dismiss Armstrong's Lanham Act claim, the Court denies the motions in all respects.

### Armstrong's Lanham Act Claims

Because the moving defendants' challenges to Armstrong's Lanham Act claims lend themselves to expeditious resolution, these shall be addressed first.

The Virgin/Island Defendants have pressed that Armstrong's Lanham Act claim should be dismissed because (1) it is duplicative of his claim for copyright infringement; (2) Armstrong fails to assert any consumer confusion, as is required under the Lanham Act; and (3) the Lanham Act may not be applied extraterritorially as against Virgin UK, Island, and

---

1. Armstrong has contended that two affidavits submitted by attorneys in this action "are not based on any personal knowledge of the facts and merely set forth legal argument that is not the proper subject of an affidavit."

Massive Attack. In its papers, the EMI Group presses points (1) and (2), but not the third claim regarding extraterritoriality.

In addition to challenging the second and third points of contention listed above, Armstrong has disputed the moving defendants' assertion that the Lanham Act claim raised in Count III of his Complaint is duplicative of his copyright claims, pressing that the claim "adds allegations of false descriptions of authorship and copyright ownership in exploiting *Unfinished Sympathy* that creates a false impression of the source of the song and the recording." This argument is unavailing.

As the Honorable Constance Baker Motley summarized governing law in *Weber v. Geffen Records, Inc.*, 63 F.Supp.2d 458 (S.D.N.Y.1999), a case in which the plaintiff asserted both copyright and Lanham Act claims in connection with the exclusion of his name from the credits of various songs recorded by the musical group "Guns N' Roses":

> Aware that nearly every copyright-based claim involves a charge of improper failure to credit a purported author, the Second Circuit has limited the extent to which a copyright-based claim may support a Lanham Act claim . . . .

> For the Lanham Act to apply to a copyright-based claim, an aggrieved author must show more than a violation of the author's copyright-protected right to credit and profit from a creation. The author must make a greater showing that the designation of origin was false, was harmful, and stemmed from "some affirmative act whereby [the defendant] affirmatively represented itself as the owner." . . .

*Id.* at 463 (*quoting Lipton v. Nature Co.*, 71 F.3d 464, 473–74 (2d Cir.1995)). In finding that the plaintiff's Lanham Act claims were duplicative of his copyright claims, and hence barred, Judge Motley noted that any false designation of originality represented by the defendants' failure to identify the plaintiff as a co-author

was not such as would allow the plaintiff to escape dismissal. *See id.* at 464 ("Plaintiff's allegations are those of a standard copyright violation. As support for a Lanham Act claim, they do not show the requisite affirmative action of falsely claiming originality beyond that implicit in any allegedly false copyright."); *see Richard Feiner & Co. v. H.R. Indus., Inc.*, 10 F.Supp.2d 310, 316 (S.D.N.Y.1998) (dismissing Lanham Act claim as duplicative of copyright claim).

While Armstrong has contended that the attribution of "Unfinished Sympathy" to Massive Attack constituted a false description of authorship and copyright ownership cognizable under the Lanham Act, a review of both the record and the Complaint reveals that, even when viewed in the light most favorable to Armstrong, his claims under the Lanham Act essentially track those asserted under copyright law. Any claim of false originality on the part of the defendants in this action does not venture beyond that implicit in any allegedly false copyright. *See Agee v. Paramount Communications*, 59 F.3d 317, 327 (2d Cir. 1995); *Weber*, 63 F.Supp.2d at 464; *Richard Feiner & Co.*, 10 F.Supp.2d at 316. Even were the Court only called upon to decide a Rule 12(b)(6) motion concerning the vitality of Armstrong's Lanham Act claim, dismissal would be in order.

Consequently, Armstrong's Lanham Act claim is defective and shall be dismissed in its entirety. Because the Court finds that such dismissal is required on the grounds set forth above, the moving defendants' contentions regarding marketplace confusion and extraterritoriality need not be addressed.

### Subject Matter and Personal Jurisdiction

More difficult to untangle are the parties' contentions concerning this Court's subject matter jurisdiction over Armstrong's copyright claims.

The parties in this action have made a variety of arguments concerning the appli-

cability of United States copyright law to defendants and/or acts of infringement located abroad, as well as concerning the applicability of foreign copyright law to infringements committed abroad, some of which have tended to confuse the issues at play with respect to subject matter jurisdiction. Armstrong's complaint asserts causes of action under both domestic and foreign copyright law. These claims are governed by distinct legal regimes.

## I. *Subject Matter Jurisdiction Over Claims Asserted Under the Copyright Act*

██ As a general principle, it is not seriously disputed that United States copyright laws do not have extraterritorial effect, and that infringing acts that take place entirely outside of the United States are not actionable under our copyright laws. *See Richard Feiner & Co. v. Turner Entertainment Co.,* No. 96 Civ. 1472(RO), 1998 WL 78180, at *1 (S.D.N.Y. Feb.24, 1998); *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.,* No. 96 Civ. 1103(MBM), 1996 WL 724734, at *4 (S.D.N.Y. Dec.17, 1996); *Metzke v. May Dep't Stores Co.,* 878 F.Supp. 756, 760 (W.D.Pa.1995); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 17.02 (1999) [hereinafter "Nimmer"].

As with all general principles and broad pronouncements, however, there are exceptions. Under established precedent, for example, a claim under United States law may arise for acts of infringement committed abroad where those acts are permitted or initiated by predicate acts of infringement within the United States. *See Update Art, Inc. v. Modiin Pub., Ltd.,* 843 F.2d 67, 73 (2d Cir.1988); *Richard Feiner & Co.,* 1998 WL 78180, at *1–2; *Fun–Damental Too,* 1996 WL 724734, at *4–5; *De Bardossy v. Puski,* 763 F.Supp. 1239, 1243 (S.D.N.Y.1991); *see also NFL v. PrimeTime 24 Joint Venture,* No. 98 Civ. 3778(LMM), 1999 WL 163181, at *3–4 (S.D.N.Y. Mar.24, 1999) (noting that "PrimeTime's first transmission of the sig-

nals, captured in the United States, from the United States, is necessarily a 'domestic predicate act [which is] itself an act of infringement in violation of the [United States] copyright laws' ") (*quoting Fun–Damental Too,* 1996 WL 724734, at *5). For example, the unauthorized manufacture of infringing goods within the United States for subsequent sale abroad may give rise to a cause of action under the Copyright Act, even where the actual sale and distribution of infringing goods occurs outside of the United States proper. *See Update Art,* 843 F.2d at 72.

Moreover, while no longer authoritative, a number of older cases held that a United States court has subject matter jurisdiction under our nation's copyright laws when a defendant "authorizes" another to commit infringing acts, notwithstanding the fact that such acts are committed abroad. *See Peter Starr Prod. Co. v. Twin Continental Films, Inc.,* 783 F.2d 1440, 1443 (9th Cir.1986); *ITSI T.V. Prods., Inc. v. California Auth. of Racing Fairs,* 785 F.Supp. 854, 862 (E.D.Cal.1992), *aff'd in part, rev'd in part,* 3 F.3d 1289 (9th Cir. 1993). This line of cases has been subsequently repudiated, and it is now generally accepted that there can be no liability under the Copyright Act for authorizing an act that itself could not constitute infringement of rights secured by United States law. *See Subafilms, Ltd. v. MGM–Pathe Communications Co.,* 24 F.3d 1088, 1093– 94 (9th Cir.1994); *see also Fun–Damental Too,* 1996 WL 724734, at *6 (holding that "mere authorization and approval of copyright infringements taking place outside the United States is not a copyright violation and does not create jurisdiction over those extraterritorial acts"); *PrimeTime, 24 Joint Venture,* 1999 WL 163181, at *4 (indicating court's acceptance of 9th Circuit's position in *Subafilms* ).

██ However, as the Virgin/Island Defendants have correctly observed in their papers, the flow of events in this case does not parallel that of *Update Art* and its progeny. *See Update Art,* 843 F.2d at 73

("As the applicability of American copyright laws over the Israeli newspapers depends on the occurrence of a predicate act in the United States, the geographic location of the illegal reproduction is crucial. If the illegal reproduction of the poster occurred in the United States and then was exported to Israel, the magistrate properly could include damages accruing from the Israeli newspapers. If ... this predicate act occurred in Israel, American copyright laws would have no application ....."); *Cf. Shaw v. Rizzoli Int'l Pubs., Inc.,* No. 96 CIV. 4259(JGK), 1999 WL 160084, at *3–4 (S.D.N.Y. Mar.23, 1999) (holding, where "parties agree[d] that both the English and Italian versions of the Rizzoli publications were compiled and printed entirely in Italy by [defendant] RCS, an Italian corporation," that summary judgment was appropriate "as to the publications distributed in Italy"); *Fun–Damental Too,* 1996 WL 724734, at *6 (noting that "[b]ecause plaintiff has failed to allege any infringement within the United States that led to extraterritorial infringement, the general rule that extraterritorial infringements are not violations of the Copyright Act applies, and the extraterritorial acts of infringement are not within this court's jurisdiction"). Given the record presented and Armstrong's allegations, no predicate acts of infringement would appear to have occurred within the United States that could justify application of United States copyright law to subsequent acts of infringement undertaken in the United Kingdom or beyond. Rather, even when crediting Armstrong's claims of infringement, it would seem that our unfolding story of infringement begins abroad, with the composition, distribution, and licensing of "Blue Lines" in Great Britain. Insofar as subject matter jurisdiction is concerned, however, United States copyright law cannot be applied to wholly foreign acts of infringement merely because foreign infringement will have adverse effects within the United States. *See Subafilms,* 24 F.3d at 1095.

Consequently, to the extent that Armstrong seeks to recover for alleged acts of infringement solely committed abroad, such as the distribution and sale of "Blue Lines" albums in the United Kingdom, he could not obtain such recovery under our copyright laws.

This is not the end of the story, however.

■ A defendant in an infringement action may be held liable for acts of infringement if that defendant is either contributorily or vicariously liable for another's direct act of infringement. Where those acts of infringement occur within the United States and a plaintiff seeks to hold a foreign defendant contributorily or vicariously liable for those acts, it has been held that subject matter jurisdiction may exist, and that the exercise thereof does not conflict with the doctrine of nonextraterritoriality. *See Blue Ribbon Pet Prods., Inc. v. Rolf C. Hagen (USA) Corp.,* 66 F.Supp.2d 454, 461–63 (E.D.N.Y.1999); *Stewart v. Adidas A.G.,* No. 96 Civ. 6670(DLC), 1997 WL 218431, at *3 (S.D.N.Y. Apr.30, 1997); *GB Marketing USA Inc. v. Gerolsteiner Brunnen GmbH & Co.,* 782 F.Supp. 763, 773 (W.D.N.Y. 1991); *c.f. Metzke,* 878 F.Supp. at 760 (holding, despite defendant's claim that it could not be held liable for infringing acts of third-parties, that defendant could be held liable for foreign third party's infringement "if it knew or should have known that [third party] Maru Fung's copies of Ms. Metzke's designs would be distributed by non-May retailers in the United States."). As the Honorable Lawrence K. Karlton held in *ITSI T.V. Productions,* "to satisfy the jurisdictional requirement that the defendant commit an act of infringement in the United States, the plaintiff must show only that the direct act of infringement for which defendant is contributorily or vicariously liable occurred in the United States." 785 F.Supp. at 864, *rev'd in part on other grounds,* 3 F.3d 1289 (9th Cir.1993). As Judge Karlton noted, merely because the situs of a partic-

ular defendant's activities is located abroad does not prevent the court from exercising subject matter jurisdiction over claims brought under United States law:

Plaintiff need not show that defendant's acts which give rise to contributory or vicarious liability occurred in the United States. Such a requirement is not mandated by the doctrine of nonextraterritoriality and would confound the questions of subject matter and personal jurisdiction. Subject matter jurisdiction requires the court to determine whether a claim actionable in this court has been stated; personal jurisdiction requires the court to determine whether a particular defendant has sufficient contacts with the forum state to permit the court to exercise power over that defendant. Put another way, it is possible for a defendant to commit acts outside the United States sufficient to find it contributorily or vicariously liable for acts of infringement committed by others within the United States, but the defendant's conduct might not be sufficient to permit the court to exercise personal jurisdiction over the defendants.

Thus, to the extent that any of the foreign defendants in this action could be found contributorily or vicariously liable for acts of subsequent infringement within the United States, this Court would possess subject matter jurisdiction over Armstrong's Copyright Act claims against those defendants.

■ As the Second Circuit has held, "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin Publ'g Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971); *see Cable/Home Communication v. Network Prods.,* 902 F.2d 829, 845 (11th Cir.1990). It is, of course, an open question whether Armstrong could make such a showing concerning those defendants located in the United Kingdom. In evaluating claims of

contributory infringement under analogous circumstances, for example, courts have often looked to the relationship between the defendants, as well as to the alleged contributory infringer's level of awareness concerning the infringing nature of the protected materials distributed or sold within the United States. *See ITSI T.V. Prods.,* 785 F.Supp. at 866; *see generally* 3 Nimmer § 12.04[A] (discussing contributory infringement).

However, a review of applicable authorities reveals that the facts necessary to make such a showing would be largely in the possession of the defendants, and it would seem inappropriate to resolve the matter in decisive fashion without allowing Armstrong an opportunity to obtain discovery.

Conversely, Armstrong has hardly demonstrated his own entitlement, at this stage in the litigation, to summary judgment dismissing the defendants' subject matter jurisdiction-related defenses.

Thus, to the extent that any of the moving parties seek summary judgment concerning this Court's subject matter jurisdiction over claims arising under the Copyright Act, their motions are denied, with leave granted to renew at the close of discovery in this action.

## II. *Subject Matter Jurisdiction Over Claims Asserted Under Foreign Copyright Law(s)*

The parties have also jousted over Armstrong's ability to recover from the defendants based upon "international" copyright law. At times, it has appeared unclear whether Armstrong premises his claims upon violations of copyrights he claims to possesses in other fora, or whether his claims are premised upon the infringement, under the laws of other nations, of his alleged United States copyright.

To be sure, Armstrong's second cause of action is not a model of clarity. Nevertheless, to the extent that Armstrong alleges that some or all of the defendants in this

action committed violations of foreign copyright laws, summary judgment would not be appropriate in favor of either Armstrong or the Virgin/Island Defendants.

■ The question presented is whether, if any of the defendants committed acts of infringement abroad actionable under the laws of foreign nations, this Court may exercise subject matter jurisdiction over such claims—not whether it is advisable, convenient, or wise to hear such claims. Moreover, whether or not various foreign defendants are amenable to suit within this district does not affect the Court's inquiry with respect to subject matter jurisdiction. It is, after all, possible for a court to have subject matter jurisdiction over a particular set of claims, but not personal jurisdiction over a particular defendant.

■ While certain courts have, at times, demonstrated their reluctance to "enter the bramble bush of ascertaining and applying foreign law without an urgent reason to do so," *see ITSI T.V. Prods.*, 785 F.Supp. at 866, there is no principled reason to bar, in absolute fashion, copyright claims brought under foreign law for lack of subject matter jurisdiction. Not only is this Court called upon to enter bramble bushes, briar patches, and other thorny legal thickets on a routine basis, *see, e.g., Briarpatch Ltd. v. Pate*, 81 F.Supp.2d 509, 511 (S.D.N.Y.2000), but a number of persuasive authorities and commentators have also indicated that the exercise of subject matter jurisdiction is appropriate in cases of transnational copyright infringement. *See London Film Prods. Ltd. v. Intercontinental Communications*, 580 F.Supp. 47, 48–50 (S.D.N.Y.1984); *Frink America, Inc. v. Champion Road Machinery Ltd.*, 961 F.Supp. 398, 404–05 (N.D.N.Y.1997); 3 Nimmer § 17.03; 3 Paul Goldstein, Copyright § 16.2 (2000) [hereinafter "Goldstein"].[2] As Professor Nimmer has explained:

> Even if the United State Copyright Act is clearly inoperative with respect to acts occurring outside of its jurisdiction, it does not necessarily follow that American courts are without [subject matter] jurisdiction in such a case. If the plaintiff has a valid cause of action under the copyright laws of a foreign country, and if personal jurisdiction of the defendant can be obtained in an American court, it is arguable that an action may be brought in such court for infringement of a foreign copyright law. This would be on a theory that copyright infringement constitutes a transitory cause of action, and hence, may be adjudicated in the courts of a sovereign other than the one in which the cause of action arose.

3 Nimmer § 17.03; *see* 3 Goldstein § 16.2 ("Causes of action for copyright infringement are transitory and may be brought in any court that has jurisdiction over the defendant. Subject to jurisdictional requirements, a copyright owner may sue an infringer in United States courts even though the only alleged infringement occurred in another country. Under the territoriality principle, the copyright law of the other country, and not United States copyright law, will govern the action in the United States.").

In the present case, this Court would unquestionably have subject matter jurisdiction over any claims properly arising under United States copyright law, potentially allowing the Court to exercise pendant jurisdiction over claims arising under foreign law. Moreover, there would ap-

---

**2.** Furthermore, other courts presented with the question of whether they should hear copyright claims premised upon violations of foreign law have resolved this question only under a *forum non conveniens* line of analysis. *See Stewart*, 1997 WL 218431, at *6–7; *Murray v. British Broadcasting Corp.*, 906 F.Supp. 858, 861–65 (S.D.N.Y.1995), *aff'd*, 81 F.3d 287 (2d Cir.1996). While these decisions do not explicitly indicate that subject matter jurisdiction over such claims may be exercised, it is worth asking whether those courts would have tarried with *forum non conveniens* analysis if they did not possess subject matter jurisdiction in the first instance.

pear to be complete diversity as among the parties to this action.

There is therefore no reason to believe, at this point, that this Court would be absolutely foreclosed from applying foreign law to Armstrong's claims of infringement. *C.f. World Film Servs., Inc. v. RAI Radiotelevisione Italiana S.p.A*, No. 97 Civ. 8627(LMM), 1999 WL 47206, at *8 (S.D.N.Y. Feb.3, 1999) (noting, in the context of *forum non conveniens* analysis, that, while "it is clear that plaintiff's claims arise under both U.S. and Italian intellectual property law .... [t]here is no reason to believe that this Court will be unable to apply Italian copyright law as necessary"). Whether a court has personal jurisdiction over a particular foreign defendant is, of course, a different matter, as is whether or not a United States court is the appropriate forum for asserting copyright claims under foreign law. However, a motion to dismiss on *forum non conveniens* grounds is not presently before the Court, and it would be inappropriate to prejudge how such a motion would be determined—especially given that it is not yet clear what foreign laws the Court would be called upon to apply.

Moreover, while the Virgin/Island Defendants have contended that dismissal of Armstrong's second cause of action is required under Rule 44.1, Fed.R.Civ.P., and it is true that Armstrong has not identified the specific countries whose copyright laws he seeks to avail himself of, this alone would not be grounds for summary judgment at the present stage in the litigation. Obviously, at some point Armstrong will need to provide the defendants with reasonable notice concerning the foreign laws upon which he seeks to rely. *C.f. Rodin Properties–Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.*, 49 F.Supp.2d 728, 741 n. 6 (D.N.J.1999). The rapidity with which that day arrives will no doubt be dependant upon the pace of discovery in this action. After all, it is through discovery that Armstrong will presumably learn about the defendants' distribution and licensing activities abroad.

Conversely, because Armstrong has yet to enlighten the Court concerning which nations' laws he seeks to apply, Armstrong is not entitled to summary judgment on his motion to strike the defendants' subject matter jurisdiction defenses.

Leave is granted for any party to challenge this Court's subject matter jurisdiction over foreign claims at the close of discovery in this action.

### III. *Personal Jurisdiction Over Defendants Island and Virgin UK*

■ In their papers, the Virgin/Island Defendants suggest that this Court lacks personal jurisdiction over Island and Virgin UK because it is undisputed that both are United Kingdom companies that neither solicit business nor maintain bank accounts, offices, or employees in the United States. These defendants also claim that Virgin UK and Island have not transacted business in the United States, and would not be subject to New York's "long-arm" statute.

However, it is not altogether clear that these defendants' status as United Kingdom corporations, or the fact that they did not maintain a formal presence in New York, necessarily shields them from suit in the United States. Jurisdiction over these foreign defendants may well depend on the nature of their licensing activities, as well as their business relationship(s) with domestic entities accused of infringement. *See Mattel, Inc. v. MCA Records, Inc.*, 28 F.Supp.2d 1120, 1127–28 (C.D.Cal.1998) (holding that "limited" jurisdiction existed over foreign defendants, given their intent to affect the forum, their licensing agreements, and coordination of release strategies; noting that "[t]he three foreign defendants did more than merely have their music product end up in California by happenstance," as "[t]here were cross-licensing agreements between all of the members of the Universal Group," and "a coordinated plan existed among ... all of

the defendants to distribute the Barbie Girl song around the world, including the United States"); *Palmieri v. Estefan*, 793 F.Supp. 1182, 1190–94 (S.D.N.Y.1992) (finding that domestic entity CBS acted as agent in United States for its independent foreign subsidiaries, for personal jurisdiction purposes, given structure of "matrix" licensing agreements between entities); *Larball v. CBS, Inc.*, 664 F.Supp. 704, 707–08 (S.D.N.Y.1987) (same); *see also Blue Ribbon Pet*, 66 F.Supp.2d at 460 (holding that "Hagen Canada's out-of-state acts contributed to or induced Hagen USA's infringement ... within New York and are sufficient to subject it to personal jurisdiction in New York"). *But see Intersong–USA, Inc. v. CBS, Inc.*, No. 84 Civ. 0998(JFK), 1990 WL 131191, at *6 (S.D.N.Y. Aug. 30, 1990) ("While plaintiffs have shown that CBS Records markets in the U.S. recordings of the affiliates, the matrix agreements indicate that this is a mere licensing arrangement, through which the affiliates obtain royalties. There is no suggestion, nor could there be, that the foreign affiliates exert any type of control over CBS records, thus making CBS Records their agent in the U.S."). Furthermore, at least one court within this district has held that a foreign defendant's vicarious or contributory liability for the infringing acts of another within the United States may give rise to long-arm jurisdiction under New York law. *See Stewart*, 1997 WL 218431, at *3 ("There is no evidence that adidas A.G. has itself offered for sale infringing goods in New York. Stewart's theory of the case, however, is that adidas A.G. is vicariously and contributorily liable for the actions of adidas America. adidas America did sell allegedly infringing goods in New York. Insofar as adidas A.G. is vicariously or contributorily responsible for those sales, it is subject to personal jurisdiction under CPLR § 302(a)(2)").

To be sure, not every licensing agreement concerning allegedly infringing material will automatically subject a foreign licensor to jurisdiction in the New York

courts. *See Larball Publ'g*, 664 F.Supp. at 708; *see also Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir.1993) (noting that "Rano's argument [that personal jurisdiction existed because foreign defendant Sipahioglu caused and profited from the grant of licenses of photographs, resulting in distribution in California] ... would render Sipahioglu, and other foreign owners of art who sell their products to publications, amenable to personal jurisdiction in every state in which their art eventually is displayed"). However, courts have found foreign corporations accused of copyright violations to be within the personal jurisdiction of United States courts, even where those entities did not themselves commit acts of infringement within the United States. *See Larball*, 664 F.Supp. at 708.

As Armstrong has noted in opposing the Virgin/Island Defendants' motion, discovery has yet to be obtained from the defendants in this action. Moreover, as with many of the issues presented by the parties' motions, the showing required of Armstrong is highly dependant upon facts concerning the corporate structure, distribution practices, and business dealings of the defendants. These are facts that Armstrong is entitled to make efforts to obtain, and it would be improper to dismiss this action without affording him the opportunity to do so.

Consequently, the Virgin/Island Defendants' motion for summary judgment is denied to the extent that it seeks a ruling that Island or Virgin UK are unamenable to suit in the United States. Leave is granted to renew that motion at the close of discovery in this action.

## IV. *Application of the Statute of Limitations*

The statute of limitations applicable to copyright infringement actions is contained in 17 U.S.C. § 507(b) ("Section 507(b)"), which provides that "[n]o civil action shall be maintained under the provisions of this

title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).

In his papers, Armstrong contends that he is entitled to summary judgment dismissing the defendants' statute of limitations defenses, asserting that his claims for infringement only "accrued" once he "learned that Unfinished Sympathy included a wrongful use of his musical work." According to Armstrong, he only became aware of the use of his copyrighted material in April of 1996, when he had occasion to see an adidas commercial during a baseball game. According to Armstrong, the commercial contained an unauthorized sampling of his copyrighted musical work, and he promptly engaged an attorney to protect his intellectual property rights. Because his Complaint was filed less than three years thereafter, Armstrong asserts that he is entitled to recover for infringement claims that would otherwise be time-barred.

Not unexpectedly, this position has not remained unchallenged by a number of defendants, who have claimed that (1) Armstrong's claim accrued earlier than he asserts, either at the initiation of allegedly infringing activity or at various points prior to 1996; and/or (2) notwithstanding the accrual date of Armstrong's claims, he is only entitled to recover damages for those infringing acts committed within three years of suit.

■ For the purposes of copyright law, a claim accrues when the plaintiff knew or should have known of the infringement. *See Stone v. Williams,* 970 F.2d 1043, 1048 (2d Cir.1992); *Maurizio v. Goldsmith,* No. 96 Civ. 4322(LMM), 2000 WL 97666, at *6 (S.D.N.Y. Jan. 26, 2000); *Yurman Design Inc. v. Chaindom Enters., Inc.,* No. 99 Civ. 9307(JFK), 1999 WL 1075942, at *7 (S.D.N.Y. Nov. 29, 1999), *reconsideration denied,* 2000 WL 217480 (S.D.N.Y. Feb.

22, 2000); *Weber,* 63 F.Supp.2d at 464–65. Ordinarily, the statute of limitations begins to run when the plaintiff has knowledge of, or with reasonable diligence should have discovered, the critical facts of infringement. *See Maurizio,* 2000 WL 97666, at *6; *Fort Knox Music, Inc. v. Baptiste,* 47 F.Supp.2d 481, 483 (S.D.N.Y.1999), *remanded on other grounds,* 203 F.3d 193 (2d Cir.2000); *Berns v. EMI Music Publ'g, Inc.,* No. 95 Civ. 8130, 1999 WL 1029711, at *9 (S.D.N.Y. Nov. 12, 1999); *Rosner v. Codata Corp.,* 917 F.Supp. 1009, 1019 (S.D.N.Y.1996).[3]

■ A review of the record reveals that the question of accrual has been hotly contested. Thus, while Armstrong affirms that he did not learn of the alleged infringement until 1996, and that there is no reason why he would have necessarily been aware of "Unfinished Sympathy" 's release, the defendants have pressed that he was on notice of possible infringement at an earlier point in time, given the wide distribution and popularity of the song. It is therefore clear that factual disputes exist precluding the granting of summary judgment in favor of any party at the present time.

The moving defendants have sought to limit Armstrong's damages claims to those infringements occurring within three years of Armstrong's date of filing, notwithstanding the date of his claims' accrual. While under the workaday circumstances of most copyright infringement cases it will ordinarily be the case that the operation of the three-year limitations period will be a simple matter of counting back three years from the date a plaintiff's complaint was filed, this case presents difficult questions concerning that methodology and its applicability where the accrual date is a matter of significant dispute.

---

**3.** As Judge Motley noted in *Weber,* 63 F.Supp.2d at 464, "[a]s in all statute of limitations inquiries, accrual will be later than the date of violation only to the extent that plaintiff exercised reasonable diligence but remained unaware of the violation." *Id.* (citation omitted).

It is true that a number of cases within this Circuit could be taken for the simple proposition that Section 507(b) limits a plaintiff's recovery to "damages that have accrued within the three year period immediately preceding the commencement of the suit," *Berns*, 1999 WL 1029711, at *8; *see Gaste v. Kaiserman*, 669 F.Supp. 583, 584 (S.D.N.Y.1987). However, a careful review indicates the complexity of the issue. For example, a review of cases employing a "counting back" approach to copyright limitations reveals that courts utilizing such a methodology have not simultaneously extended accrual dates or otherwise tolled the limitations period applicable to a plaintiff's copyright claims. *See Berns*, 1999 WL 1029711, at *9–10. Under such circumstances, it is not surprising that the method of calculation employed is one of counting back, as calculation of the accrual date does not present a conflict with this approach.

Moreover, while it is the case that courts within this circuit have frequently limited a plaintiff's recovery under the copyright laws to those infringements that have oc-curred within three years of suit, even where earlier acts of infringement are held to be time-barred, those cases are inapposite as well. In many cases courts have taken pains to articulate the limitations rule in terms of counting back three years precisely because earlier infringement claims would be time-barred given the actual accrual dates of those claims. While the Second Circuit has not endorsed a "continuing violation" approach to copyright infringement,[4] the argument goes, nothing should prevent a plaintiff from recovering damages for discrete acts of infringement occurring during the three-year limitations period immediately prior to suit.[5] *See Yurman Design*, 1999 WL 1075942, at *7 (holding that, notwithstanding defendant's claim that plaintiff "should have known of any alleged infringement by 1995 at the latest, four years before [Plaintiff] brought ... [its] suit," infringement claims in connection with items offered for sale in defendant's 1999–2000 catalog would not be barred by statute of limitations); *Galet v. Carolace Embroidery Co.*, No. 97 Civ. 5702(DLC), 1998 WL 386434,

4. Under such an approach, the continuation of infringement accruing more than three years prior to suit would allow recovery not only for infringement occurring within three years of suit, but also for the earlier infringement, which would be time-barred under Section 507(b). *See Byron v. Chevrolet Motor Div.*, No. 93 CIV. 1116(AJP), 1995 WL 465130, at *3 (S.D.N.Y. Aug.7, 1995) ("[T]he Second Circuit has rejected the 'continuous wrong' doctrine, which would allow a plaintiff to recover for copyright infringements occurring prior to the three year limitations period so long as there was a continuous pattern of violations ending within the three year period."); *see also Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir.1993) (rejecting continuing infringement doctrine).

5. It should be observed that, under the law of this Circuit, this reasoning would only apply to claims of copyright infringement, as opposed to claims of joint authorship. *See Maurizio*, 84 F.Supp.2d 455, 463–64 ("Maurizio has asserted two claims under the Copyright Act: copyright infringement and joint authorship. Regarding her ... infringement claim, Maurizio may still recover for acts of infringement occurring within three years of the filing of this suit, though her claim is disallowed as to earlier infringing acts. Maurizio's joint authorship claim is barred in its entirety, since 'plaintiffs claiming to be joint co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration.' ") (quoting *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir.1996)).

In *Merchant*, the Second Circuit held that plaintiffs asserting co-authorship claims would be prospectively barred from seeking recovery three years after accrual of their claim(s), but indicated that this rationale would not apply to claims of copyright infringement. As the *Merchant* court explained:

We note that Plaintiffs' cause of action is not based on copyright infringement, a point Plaintiffs do not contest on appeal. Our holding here does not disturb our previous rulings that a copyright owner's suit for infringement is timely if instituted within three years of each infringing act for which relief is sought, but recovery is barred for any infringing acts occurring more than three years prior to suit.

92 F.3d at 57 n. 8.

at *3 (S.D.N.Y. July 10, 1998) ("The Second Circuit has generally rejected the continuous wrong doctrine as a means of extending the statute of limitations period. Therefore, Galet may only bring a cause of action for any infringement of his copyright occurring since July 31, 1994, three years before he filed this lawsuit"); *Rosner*, 917 F.Supp. at 1017 ("In determining whether the statute of limitations for copyright infringement has expired, 'the limitations period does not begin to run from the first infringing act.' In this circuit, '[e]ach act of infringement is a distinct harm giving rise to an independent claim for relief. . . . This does not mean that when infringements occur during the limitations period recovery may be had for past infringements. Recovery is allowed only for those acts occurring within three years of suit and is disallowed for earlier infringing acts.' ") (citations omitted); *see also Repp v. Webber*, 914 F.Supp. 80 (S.D.N.Y.1996) (addressing motion contending that counterclaims filed in 1991 only reached acts of infringement occurring after 1988). In the instant case, after all, a finding that Armstrong's claims against the defendants accrued in 1991 would mean that Armstrong could only recover damages for those infringing acts occurring less than three years prior to his initiation of the instant action.[6] *See Johnson v. Radio City Prods., Inc.*, No. 97 Civ. 4099(JSR), 1998 WL 171463, at *2 (S.D.N.Y. April 13, 1998) (holding that acts of infringement occurring earlier than three years prior to suit are barred by Section 507(b), but that triable issue of fact "exists as to whether

acts of copying and distribution occurred thereafter").

However, if it is assumed for the sake of argument that the accrual date of Armstrong's claims was, in fact, April of 1996, then the differences between a statute of limitations and an absolute limitation of liability are apparent. Unlike the standard case where infringing acts straddle the limitations period and the earlier acts are time-barred, with Section 507(b) applied to allow suit only over those acts of infringement occurring within three years of suit, accepting Armstrong's position with respect to the initial accrual date of his copyright claims would mean that even the earlier acts of infringement could form the basis for valid infringement claims.[7] Indeed, counting back from the date of suit would therefore be unnecessary and unwarranted, because recovery could be predicated upon events occurring between 1991 and July of 1995—notwithstanding the fact that such events occurred more than three years prior to Armstrong's initiation of this action.

Thus, to the extent that the defendants request that this Court impose an interpretive gloss on Section 507(b) delimiting a plaintiff's recovery of damages to those damages occurring within three years of suit for copyright infringement, notwithstanding the initial accrual date of a plaintiff's claims or any other tolling of the limitations period, the Court declines the invitation.

---

6. In this regard it is worth noting that the distribution of a copyrighted work by sale or other transfer of ownership, as well as performance of the work or the granting of licenses, can constitute acts of infringement under the Copyright Act. *See Repp*, 914 F.Supp. at 83.

7. It is for this reason that *Stone v. Williams* does not support the defendants' proposition that Section 507(b) operates as an absolute bar to recovery for any acts of infringement occurring more than three years prior to suit. In *Stone*, it should be remembered, the Second Circuit upheld the district court's determination that Stone's claims had accrued by

1979. 970 F.2d at 1049. Stone brought suit in 1985, already more than three years after accrual, and while the Second Circuit did not allow Stone to recover on those claims that had already lapsed, it found "Stone's suit . . . timely insofar as relief is sought for defendants' failure to remit to her a proportionate share of royalties received within three years of suit." 970 F.2d at 1051.

Unlike the instant case it was therefore not an open question in *Stone* whether the plaintiff could recover on claims arising—but not accruing—more than three years prior to suit.

Because the Court finds that the defendants' statute of limitations defenses do not lend themselves to summary disposition, the Court therefore denies Armstrong's motion for summary judgment dismissing the defendants' statute of limitations-based defenses, as well as the moving defendants' reciprocal motions.

## V. Laches, Waiver, and Estoppel

Finally, the parties have jousted over whether Armstrong is entitled to summary judgment dismissing the defendants' equitable defenses of laches, waiver, and estoppel. As with many of the other matters raised in the parties' briefing, the Court finds that resolution of issues connected to these defenses is better left to another day, after the parties have had an opportunity to obtain reciprocal discovery.

Even where the applicable statute of limitations does not bar a cause of action, the equitable defense of laches may be available to a defendant. Equity, so the argument goes, aids only the vigilant, and not those who sleep on their rights. *See Stone v. Williams*, 873 F.2d 620, 623 (2d Cir.1989), *rev'd on other grounds*, 970 F.2d 1043 (2d Cir.1992).

■ To successfully invoke a laches defense, the party asserting laches must demonstrate both "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); *see Byron*, 1995 WL 465130, at *5 (same). "Stated another way, 'laches asks whether the plaintiff in asserting [his or] her rights was guilty of unreasonable delay that prejudiced the defendants.'" *Byron*, 1995 WL 465130, at *5 (*quoting Stone*, 873 F.2d at 623); *see Minder Music Ltd. v. Mellow Smoke Music Co.*, No. 98 Civ. 4496(AGS), 1999 WL 820575, at *2 (S.D.N.Y. Oct.14, 1999) (finding copyright claim barred by laches as result of delay in bringing suit and prejudice to defendants). Mere delay is not, in

and of itself, sufficient to bar a claim. *See Fort Knox*, 47 F.Supp.2d at 484 n. 1.

■ Plaintiff claims that he is entitled to summary judgment on the defendants' laches defenses. However, the defendants have responded that, setting aside Armstrong's wholesale failure to bring suit on his claims prior to seven years after "Blue Lines" was first released in the United States, Armstrong delayed approximately two years in bringing suit after he was on actual notice of the alleged infringement. According to the defendants, this delay has resulted in prejudice. As but one example, defendant Leagas Delaney notes that in 1996 it entered into various licensing agreements containing representations concerning the rights to "Unfinished Sympathy," and that had Armstrong promptly asserted his rights Leagas Delaney would not have obtained licenses for such music. In turn, defendant Island has indicated that, had it known of Armstrong's claims, it might not have licensed "Unfinished Sympathy" for use in the adidas commercial. It is worth noting that analogous investment in advertising or product development has been considered to constitute "prejudice" in the context of a laches inquiry. *See Byron*, 1995 WL 465130, at *8 (noting defendant's claim that defendant would have stopped investing in commercials using allegedly infringing song had plaintiff brought action seven years earlier; holding that "[t]o allow Byron to bring suit now, after he sat idly by for seven years while Chevrolet expended large quantities of money developing consumer recognition, would be grossly unfair.").

Armstrong responds that he was not on notice of any infringement claims until 1996, and that he therefore did not sleep on his rights in the interim period between the release of "Blue Lines" and his avowed discovery of the infringement in 1996. Moreover, Armstrong has indicated that his two-year delay in bringing suit after happening upon the adidas commercial was due to "stonewalling" on the part of

defendants, not a failure on his part to vigorously safeguard his rights.

"In evaluating the delay element of the laches test, the focus is on the reasonableness of the delay rather than on the number of years that have elapsed." *Byron,* 1995 WL 465130, at *6 (*citing Stone,* 873 F.2d at 624). Moreover, the extent of prejudice demanded to be shown varies inversely with the reasonableness and excuse for delay. *See id.* at *7. Given the fact-specific nature of a court's inquiry, the resolution of laches-related disputes is dependant "on the circumstances peculiar to each case." *Tri–Star Pictures, Inc. v. Leisure Time Prods., B.V.,* 17 F.3d 38, 44 (2d Cir.1994).

As with the statute of limitations issues discussed above, the issues presented are not amenable to summary disposition given the state of the record presently before the Court. Consequently, Armstrong's motion is denied.

While the standards governing "estoppel" and "waiver" defenses within this Circuit differ from those governing a laches defense, the Court similarly finds that Armstrong is not entitled to summary judgment dismissing those defenses. Leave is granted for Armstrong to renew his summary judgment motion with respect to these specific defenses at the close of discovery.

### Conclusion

For the reasons set forth above, the motions presently under consideration are granted in part and denied in part, and Armstrong's Lanham Act claim is dismissed.

It is so ordered.